REVISED OPINION
 

 GRIFFIN, J.
 

 Appellant, Lake Forest Master Community Association,. Inc. [“Association”], seeks review of a summary final judgment in its lawsuit against the developer
 
 [1]
 
 of its subdivision, based on alleged construction defects in improvements located in Association’s common areas.
 
 [2]
 
 The summary judgment was predicated on Association’s purported failure to give proper notice, according to Florida law,
 
 [3]
 
 and Association’s governing documents of the meeting at which authorization to bring suit was obtained.
 

 Association filed its lawsuit on June 29, 2007. The complaint, as amended, included counts for breach of implied warranty, defective construction, and building code violations and sought damages in excess of $4 million. Developer answered, denied any construction defects existed at the time of turnover and raised numerous defenses. After discovery, Developer filed a motion for summary judgment based on its contention that Association failed to meet the statutory condition precedent of approval by a majority of Association’s voting interests, as required by section 720.303(1), Florida Statutes because the meeting where approval was given had not been properly noticed. After a hearing, the trial court entered summary final judgment in favor of Developer, concluding that proper “notice was not given to all residents of the [Association] entitled to vote.”
 

 ASSOCIATION’S ACTIONS BEFORE COMMENCING THIS LITIGATION
 

 Section 720.303(1), Florida Statutes, requires that “before commencing litigation against any party in the name of the association involving amounts in controversy in excess of $100,000, the association must obtain the affirmative approval of the majority of voting interests at a meeting of the membership at which a quorum has been attained.”
 
 [4]
 
 The notice of Association’s January 9, 2007, annual meeting, mailed out to each lot owner on December 22, 2006, identified the location of the meeting — the Lake Forrest Community Clubhouse — and the time — 7:00 p.m. The
 
 *1190
 
 notice included the following statement: “The purpose of the annual meeting is to discuss the recent and future affairs and plans for the association and to fill three (3) vacancies on the Board of Directors.” Along with the notice, Association mailed lot owners a general proxy for those unable to attend, sample ballots for election of Board and Architectural Review Committee [“ARC”] members and the 2007 Association budget.
 

 According to Association documents, a quorum is thirty percent of the membership, or at least 220 lot members. There was a quorum for the January 9th annual meeting with attendance in person and by proxy totaling 290 lot owners. The election to fill vacancies on the Board of Directors was held at the meeting, but the election of ARC members could not be conducted because Association’s governing documents require that a majority of
 
 all
 
 lot owners, which is 367 owners, attend and vote for ARC members. The minutes of the January 9, 2007, annual meeting reported: “The membership agreed to recess the meeting and to reconvene the meeting on February 13, 2007 for the purpose of obtaining additional proxies to vote for candidates for the ARC.” According to the deposition testimony of Association’s secretary, Terry Copper, who was present at the meeting, prepared the minutes, and recalled that Association president announced at the close of the meeting that the annual meeting would reconvene on February 13, at 7:00, at the clubhouse.
 
 [5]
 

 In the interim, a Board meeting was conducted on February 7, 2007. According to the minutes of this Board meeting, the reconvened annual meeting on February 13 would be called to order and once a quorum was established, an election for the ARC would be conducted. The annual meeting would then be adjourned and “will reconvene once again on March 13, 2007 for the purpose of asking residents to vote on pursuing discussions or further action with the developer for alleged deficiencies.”
 

 The reconvened annual meeting took place as scheduled on February 13, 2007. More than 367 lot owners attended, either in person or by proxy, and the election for the ARC was conducted. According to the minutes of this reconvened annual meeting, the president announced at the conclusion that:
 

 This Annual Meeting will be reconvened on March 13, 2007 at 7:00 p.m. at the clubhouse for the purpose of allowing residents to vote for or against the Association pursuing remedy of deficiencies left by the developer, NTS. If NTS will not remedy the deficiencies, or arbitrate in good faith, the Lake Forest Master Community Association will authorize its attorney to initiate legal action.
 

 Prior to the March 13, 2007, reconvened annual meeting, Association prepared a “Notice of Continuation of Member Meeting and Summary of Pending Developer Issues” [“Continuation Notice”] to inform lot owners about the vote. This Continuation Notice was not mailed under separate cover to lot owners, but was mailed together with the March 2007 newsletter to lot owners on the newsletter mailing list. It was also posted at the Lake Forest clubhouse bulletin board.
 

 The reconvened annual meeting was called to order on March 13, 2007, and a quorum was established. Developer’s attorney attended this meeting and revoked the prior general proxies given by Devel
 
 *1191
 
 oper on behalf of Association’s secretary. Developer submitted new proxies, listing their counsel as Developer’s proxy holder.
 

 According to the minutes of this meeting, there was a discussion of the construction defects issue and whether Association should file a legal claim against Developer. A motion was made and seconded for approval to file a legal action against Developer, if necessary. The motion passed 255 to 35, with Developer casting its eleven votes against the motion. Suit was filed two months later.
 

 WAS DEVELOPER ENTITLED TO SUMMARY JUDGMENT BASED ON ITS CLAIM OF DEFECTIVE
 
 NOTICE?
 

 Association urges on appeal that the summary judgment in favor of Developer was wrong because: (1) the notice afforded was proper under Florida law and Association’s governing documents, (2) genuine issues of material fact preclude summary judgment, and (3) Developer waived its right to contest the validity of the annual meeting by appearing at and actively participating in all three meetings.
 
 [6]
 

 Section 720.306, Florida Statutes, governs meetings of homeowner’s associations, including matters relating to quorums, notice, the right to speak, adjournment, proxy voting, and elections. In pertinent part, the statute provides:
 

 (2) Annual meeting. — The association shall hold a meeting of its members annually for the transaction of any and all proper business at a time, date, and place stated in, or fixed in accordance with, the bylaws....
 

 [[Image here]]
 

 (4) Content of notice. — Unless law or the governing documents require otherwise, notice of an annual meeting need not include a description of the purpose or purposes for which the meeting is called. Notice of a special meeting must include a description of the purpose or purposes for which the meeting is called.
 

 (5) Notice of meetings. — The bylaws shall provide for giving notice to members of all member meetings, and if they do not do so shall be deemed to provide the following: The association shall give all parcel owners and members actual notice of all membership meetings, which shall be mailed, delivered, or electronically transmitted to the members not less than 14 days prior to the meeting. ...
 

 [[Image here]]
 

 (7)
 
 Adjournment.
 
 — Unless
 
 the bylaws require otherwise, adjournment of an annual or special meeting to a different date, time, or place must be announced at that meeting before an adjournment is taken, or notice must be given of the new date, time, or place pursuant to s. 720.308(2).
 
 Any business that might have been transacted on the original date of the meeting may be transacted at the adjourned meeting. If a new record date for the adjourned meeting is or must be fixed under s. 617.0707, notice of the adjourned meeting must be given to persons who are entitled to vote and are members as of the new record
 
 *1192
 
 date but were not members as of the previous record date.
 

 (Emphasis supplied).
 

 It is undisputed that the annual meeting was conducted on January 9, 2007, with proper notice to the members. Developer, however, claims that the required written notice of the February 13, 2007, reconvened meeting was not supplied, or, if written notice was not required, that the meeting was not adjourned in accordance with the dictates of subsection (7).
 

 To support its first contention, Developer says that, notwithstanding the statutory procedure for adjournment, Association was required by its bylaws to supply written notice of the reconvened meeting. Because subsection 720.306(7) begins with the phrase, “Unless the bylaws require otherwise....”, Developer contends that Article III of Association’s bylaws, entitled “Meeting of Members,” requires written notice of
 
 any
 
 meeting of the members:
 

 Section 3. Notice of Meeting.
 
 Written notice of each meeting of the members shall be given by, or at the directions of, the secretary or person authorized to call the meeting, by mailing a copy of such notice, postage prepaid, at least fifteen (15) days before such meeting to each member, entitled to vote thereat, addressed to the member’s address list appearing on the books of the Association, or supplied by such member to the Association for the purpose of notice. Such notice shall specify the place, day and hour of the meeting, and, in the case of a special meeting, the purpose of the meeting.
 

 Developer’s position is that a “reconvened meeting” is a meeting and that, under this bylaw, written and mailed notice of the reconvened meetings of February 13, 2007, and March 13, 2007, were required, even if section 720.306(7) were complied with. We reject this argument. An adjournment referenced in subsection 720.306(7) contemplates a temporary suspension of previously noticed proceedings
 
 [7]
 
 to be continued at a different date, time or place. We note subsection 720.306(5), like Article III, section 3 of the bylaws, requires notice be given “to members of all member meetings,” yet the statute recognizes in subsection (7) the propriety of adjournment of meetings to a different date, time or place without mailed notice if such information is announced prior to adjournment. The bylaws here, by not providing otherwise, do not displace section 720.306(7). If the January 9 and February 13 meetings were properly adjourned, the March 13 reconvened meeting was properly conducted without additional mailed notice to members.
 

 To support its second contention that the meetings were not properly adjourned, Developer submitted the minutes of the January 9, 2007, annual meeting which recite only that the date of February 13, 2007, for the reconvened annual meeting was announced. In his deposition, Association secretary, Copper, testified that, in accordance with the requirements of subsection (7), Association president did announce the date, time and place of the reconvened meeting.
 
 [8]
 
 Despite secretary Copper’s November 15, 2007, deposition testimony that the presi
 
 *1193
 
 dent did in fact state at the end of the January 9 meeting the date, time and place for the reconvened February 13 meeting, Developer contends there is no issue of fact concerning lack of compliance with section 720.306(7). Developer contends that the minutes constitute irrefutable evidence of what oral notice was given because Copper confirmed in his deposition that the minutes were accurate.
 

 For this proposition, Developer relies on case law to the effect that a party may not change its testimony to create an issue of fact in an effort to defeat a motion for summary judgment.
 
 See Weesner v. United Services Auto. Ass’n,
 
 711 So.2d 1192 (Fla. 5th DCA 1998);
 
 Arnold v. Dollar General Corp.,
 
 632 So.2d 1144 (Fla. 5th DCA 1994);
 
 Inman v. Club on Sailboat Key, Inc.,
 
 342 So.2d 1069 (Fla. 3d DCA 1977). This rule has no application here, however.
 
 [9]
 
 Copper’s deposition alone defeats the summary judgment. In sequence, the following is the salient testimony in Copper’s deposition.
 

 Q. Do you have proof of notice affidavits for the February or March 2007—
 

 A. No.
 

 Q. Why not?
 

 A. Because those meetings were not noticed by mail. Those meetings were noticed at the — for example, at the January 9th meeting it was announced that the meeting would be reconvened at a future date, time and place.
 

 Q. What about for the March meeting?
 

 A. At the February 13 meeting it was announced that the meeting would be reconvened to March 13th at a certain time at a certain place.
 

 Q. Who made these announcements?
 

 A. The president, as I recall, made the announcement.
 

 Q. And is that the case for both the February 13th meeting and the March 13th? Is that the right date?
 

 A. That’s the right date.
 

 Q. Yes. For both?
 

 A. Yes.
 

 Q. Were you present at the January 9 meeting?
 

 A. I was.
 

 Q. Were you present at the February 13 meeting?
 

 A. I was.
 

 Q. Were you present at the March 13 meeting?
 

 A. I was.
 

 [[Image here]]
 

 Q. Why was the January '09 [sic] meeting continued to February 13, '07?
 

 A. We did not have enough votes to elect three people to the architectural review committee.
 

 Q. How far were you short?
 

 A. Without looking at the documents, I believe we had one person who had, at the January 9th [meeting], received enough votes, but we needed three members. So we continued the meeting to try and solicit additional proxies or votes to get three people elected.
 

 Q. I believe your testimony earlier was that — because I asked you are there proof of notice affidavits like Exhibit 5 for the February 13th or the March 13th meeting, and you said no.
 

 A. That is correct.
 

 
 *1194
 
 Q. And your explanation was what? I don’t want to characterize it.
 

 A. We didn’t do it. It wasn’t required. My understanding is that it was not required.
 

 Q. Why is it you believe it was not required?
 

 A. We had already properly noticed the annual meeting. The February 13th meeting was an adjourned and reconvened meeting from the January 9th annual meeting.
 

 Q. And what is your testimony as to how it was adjourned?
 

 A. How it was adjourned?
 

 Q. Yeah.
 

 A. We announced prior to the close of the January 9th meeting that it was going to be reconvened on February 13th at 7 o’clock and to be held at the clubhouse.
 

 Q. Who made that announcement?
 

 A. The president made that announcement, I believe.
 

 Q. So someone who had given proxies — we’ve got a lot of proxies here; right?
 

 A. (Nods head).
 

 Q. How would they have known that the meeting was adjourned to be reconvened?
 

 A. They perhaps wouldn’t have known.
 

 Q. But you don’t think that matters?
 

 A. Their proxy was for that meeting and that meeting was continued to February 13th. That’s what they gave their proxy for. And that proxy was good for I believe a period up to 90 days.
 

 Q. You would agree with me wouldn’t you, that the minutes of the January 9, '07 meeting reflect what happened?
 

 A. Yes.
 

 Q. So that official record should control as to what happened, unless proven otherwise.
 

 MR. HOWELL: Object to the form.
 

 Q. I mean, do you disavow that as an official record of what happened, the January 9 meeting minutes?
 

 A. The meeting minutes were a record of what occurred at the January 9th meeting, yes.
 

 Q. So if those meeting minutes characterized the adjournment in a particular way, that would be correct; right?
 

 A. What do you mean that would be correct? Ask it again.
 

 Q. It would be accurate. Do you have any reason to doubt the accuracy of the meeting minutes for the January 9th meeting?
 

 A. No, I don’t.
 

 Q. As secretary, did you prepare those meeting minutes?
 

 A. I did.
 

 Q. Did you submit the meeting minutes for approval by the board?
 

 A. I did.
 

 Q. And did the board in fact approve them?
 

 A. They did.
 

 Q. So the January 9, '07 meeting minutes had been approved. I mean, they’re kind of there.
 

 A. They are.
 

 Q. We’re not going to see a changed version pop up somewhere; right?
 

 A. You’re correct.
 

 [[Image here]]
 

 Q. At the second page on HOA 000093, it says at the top, the membership agreed to adjourn the meeting and to reconvene the meeting on February 13, '07 for the purpose of obtaining additional proxies to vote for candidates of the ARC. Do you see that?
 

 
 *1195
 
 A. Yes, I do.
 

 Q. Is that the announcement that was given at the January 9,~ '07 meeting?
 

 A. not in full.
 

 Q. How does it differ?
 

 A. Because at the meeting it was announced the time and place as well. That’s not reflected in the minutes.
 

 Q. Why isn’t it reflected in the minutes?
 

 A. When I became secretary I was advised by our legal counsel to keep the minutes brief and, if anything, be on the — don’t over-elaborate. I try to keep the minutes very brief and just — I go a little further than saying what — strictly what motions were made. But I try to keep it brief and concise. That’s all I can tell you. I mean, it wasn’t to deliberately hide something, if that’s what you’re asking.
 

 The minutes of all meetings of the members of an association are part of the official records of a homeowner’s association. § 720.303(3),(4)(f), Fla. Stat. (2007). Nevertheless, Copper’s testimony that the minutes were accurate does not render irrefutable the notion that
 
 only
 
 the new date was orally announced when the January 9 meeting was adjourned. First, the relocation of the agreed date to reconvene does not mean that the place and time were not also stated, especially where, as here, the date was the only thing to change, not the time or place. Also, as Association correctly observes, parol evidence may be introduced to complete or to clarify ambiguous corporate minutes.
 
 Wimbledon Townhouse Condo. I, Ass’n v. Wolfson,
 
 510 So.2d 1106 (Fla. 4th DCA 1987) (condo association could offer parol testimony of its manager to show that association board approved special assessments even though minutes failed to so reflect). Secretary Copper’s deposition testimony that the president announced the date, time and place for the reconvened February 13 meeting in adjourning the January 9 meeting amounts to such parol evidence, amplifying the corporate minutes. At most, the lack of express reference to the same time and place in the minutes would give rise to an issue of fact, not avoid one. In light of the unequivocal deposition testimony of Copper that verbal notice of the date, time and place of the continued meeting was given, Developer cannot establish the absence of a material issue of fact by relying on the minutes.
 

 DISMISSAL v. ABATEMENT
 

 Association also contends that it was error for the court to enter a judgment dismissing its action. Association complains that dismissal has caused it to lose a portion of its claim because Association filed its action on June 29, 2007, one day before the applicable statute of repose was reduced from fifteen to ten years. § 95.11(c)(3), Fla. Stat. (2008). Thus, if Association were required to obtain new approval from its members to bring suit, its refiled suit would only encompass defects within the last ten years.
 

 Developer claims that section 720.303(1), Florida Statutes, by requiring an association to obtain the affirmative approval of membership before commencing litigation in excess of $100,000, constitutes a statutory condition precedent to bringing suit. This is a statutory limitation on the authority of the Homeowners’ Association to commit the resources of the Association to litigation, designed for the protection of its members, which, if violated, the members may or may not elect to enforce. It is not a condition precedent running in favor of a defendant to the right of an association to file suit to recov
 
 *1196
 
 er damages on behalf of the Association. Although we agree that because of its status as an owner with voting interests, Developer has the right to complain about defective notice of a meeting at which it and other members were entitled to vote, Association’s failure to obtain proper notice is not an affirmative defense to the suit for construction defects. Developer properly concedes that if it were not a member of Association, lack of valid authority of the members to file suit would not be a defense to the claims. It would be a ground for any aggrieved Association member to enjoin Association from prosecuting the lawsuit, but Developer, as owner, at most, could be entitled to abatement until the asserted defect in notice is rectified and approval obtained.
 

 REVERSED and REMANDED.
 

 TORPY and COHEN, JJ., concur.
 

 [1]
 

 . The lawsuit initially named as defendants Orlando Lake Forest Joint Venture, Orlando Lake Forest, Inc., and NTS Mortgage Income Fund. By first amended complaint filed on July 31, 2007, OLF II Corp. and Orlando Capital Corp. were added as defendants.
 

 [2]
 

 . Developer transferred ownership of the common areas to Association in a piecemeal fashion, with the last conveyance occurring on November 15, 2007. Developer had retained control of Association until September 13, 2005, when turnover of control of the Board of Directors occurred.
 

 [3]
 

 . § 720.303(1), Fla. Stat. (2007).
 

 [4]
 

 . Developer urges that the summary final judgment should be sustained under the “Tipsy Coachman Rule’’ because this statute requires a majority of
 
 all
 
 voting interests, not a majority of voting interests present at the meeting where approval is given. We reject this reading of the statute. First, it would render superfluous the quorum requirement. Also, it does not appear to be consistent with legislative intent when viewed in the context of the entire statute.
 

 [5]
 

 . The minutes were revised on December 14, 2007, to add “at 7:00 p.m. at the Lake Forest Clubhouse.” These revised minutes were attached to Copper’s December 14, 2007, affidavit in opposition to Developer's motion for summary judgment.
 

 [6]
 

 . We conclude a member has the right to complain about improper notice, whether in attendance at the meeting or not and, therefore, we reject the Association's claim of waiver. Similarly, we see no merit in Developer's several claims of misrepresentation or misconduct by Association and see no need to discuss them further.
 

 [7]
 

 . "Adjourned” — to suspend indefinitely or until a later stated time. Webster's New Collegiate Dictionary, p. 15 (1973).
 

 [8]
 

 . Because of the Legislature’s use of the disjunctive, it is not clear that anything more than the changed "date, time or place” must be announced. § 720.306(7), Fla. Stat. (2007). In this case, the time and place did not change.
 

 [9]
 

 . Association did subsequently, in advance of the hearing on the motion for summary judgment, amend the minutes and an affidavit of Copper was filed. If these were truly inconsistent with Copper's deposition testimony, they might be disallowed under the cases cited by Developer, but those are not the facts.