2020 IL App (1st) 190603-U
No. 1-19-0603

SECOND DIVISION
June 16, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL C. KIM, doing business as MICHAEL C. KIM & ASSOCIATES, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) | |
| | ) | No. 13 M1 131645 |
| v. | ) ) | |
| HEMINGWAY HOUSE CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, | ) ) ) | The Honorable Daniel J. Kubasiak, Judge Presiding. |
| | ) | |
| Defendant and Counterplaintiff-Appellant, | ) ) | |
| (Klein & Hoffman, Inc., Counterdefendant). | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1     *Held:* The trial court's grant of summary judgment in favor of the plaintiff on defendant's counterclaim was reversed where there existed a genuine issue of material fact regarding whether the defendant's board of directors properly voted to authorize the defendant's participation in the litigation.  The trial court did not abuse its discretion in allowing the plaintiff to amend his affirmative defenses where the defendant failed to present a sufficient record demonstrating error, but the trial court did err when it refused to reopen discovery after it permitted the addition of a new affirmative defense after discovery closed.

¶ 2    Defendant and counterplaintiff, Hemingway House Condominium Association ("HHCA"), appeals from the trial court's grant of summary judgment in favor of plaintiff and counterdefendant, Michael C. Kim, doing business as Michael C. Kim & Associates, on HHCA's counterclaim. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                              BACKGROUND

¶ 4    The record in this matter is voluminous, but only a small portion is relevant to the disposition of issues on appeal. Accordingly, we recite only those facts that are necessary for an understanding and disposition of the issues raised on appeal.

¶ 5    The Hemingway House Condominiums are comprised of 280 units in a 28-story, high-rise building located at 1850 N. Clark in Chicago. HHCA is charged with the operation and management of the units, with the Board of Directors ("Board") acting as the governing entity.

¶ 6    Starting in approximately 2002 or 2003, some units began to experience water intrusion. Additional units experienced similar water intrusion over the years. This water intrusion was ultimately determined to be a result of design and construction defects in the exterior wall of the building. Beginning in 2011, a dispute arose between some of the unit owners and some of the then-Board members ("Prior Board") over the type, extent, and cost of repairs necessary to resolve the water intrusion issue. Boiled down to its most basic form, the dispute centered around whether Repair Option 1 or Repair Option 2 of a report prepared by counterdefendant Klein & Hoffman, Inc. ("K&H") should be implemented. Repair Option 1 called for traditional tuckpointing and brick repair, while Repair Option 2 involved completely replacing the exterior brick façade for the entire building. Many of the unit owners desired the less costly Repair

Option 1, while many members of the Prior Board preferred the more expensive Repair Option 2.

¶ 7        After much back and forth between the opposing sides, including allegations of misconduct by the Prior Board in handling the dispute and adopting a special assessment to pay for the repairs, a case was instituted in housing court, which resulted in an order requiring HHCA to proceed in conformance with Repair Option 2. Thereafter, the Prior Board entered into a construction contract for the repairs, which contained a provision that any termination of the contract by a subsequent Board would result in a $500,000 penalty. Throughout this dispute, Kim represented HHCA and the Prior Board.

¶ 8        In September 2012, Board elections resulted in all Prior Board members who supported the adoption of Repair Option 2 being removed from office and some of the unit owners who opposed Repair Option 2 being elected. The new Board then terminated Kim as counsel for HHCA.

¶ 9        In May 2013, Kim instituted the present suit seeking to recover unpaid legal fees. In March 2017, HHCA filed its third amended counterclaim against Kim and K&H. In that counterclaim, HHCA alleged that Kim breached his fiduciary duty, aided and abetted the Prior Board in breaching its fiduciary duty, aided and abetted the Prior Board's scheme to defraud, and engaged in a civil conspiracy with the Prior Board. HHCA also alleged that K&H breached its contract, committed professional negligence, aided and abetted the Prior Board's breach of fiduciary duty, aided and abetted the Prior Board's scheme to defraud, and engaged in a civil conspiracy with the Prior Board. HHCA's claims against K&H were eventually settled and dismissed with prejudice in October 2018. All of HHCA's allegations related to the dispute over and special assessment for the water intrusion repairs.

¶ 10      Kim filed his answer and affirmative defenses to the third amended counterclaim in October 2017. In April 2018, Kim issued requests for admission to HHCA, centering around the question of whether the Board properly voted to approve HHCA's participation in the present and other litigation related to the repair dispute. HHCA objected to the requests on the basis, among others, that they were irrelevant to the issues involved in the present litigation. Thereafter, Kim filed a "Motion to Strike Objections, Deem Facts Admitted and Motion for Sanctions" ("motion to strike").

¶ 11      While Kim's motion to strike was pending, on May 31, 2018, shortly after all discovery had closed, Kim filed a motion for leave to file amended affirmative defenses. In it, he sought leave to add an affirmative defense alleging that HHCA's participation in the current suit was precluded by the Board's failure to properly vote, in accordance with the Illinois Condominium Property Act ("Act") (765 ILCS 605/1 *et seq.* (West 2012)), on whether to defend against Kim's complaint and file a counterclaim.

¶ 12      Following an evidentiary hearing on Kim's motion to strike, the trial court granted Kim's motion to strike and deemed the requests admitted. It also granted Kim leave to amend his affirmative defenses. HHCA filed a motion to reconsider the grant of the motion to strike and a motion to reopen discovery. In the latter, HHCA argued that it should be afforded the opportunity to conduct discovery on Kim's new affirmative defense. The trial court ultimately granted HHCA's motion to reconsider but denied its motion to reopen discovery. With respect to the motion to reconsider, the trial court found that because the vote issue had not been pled as an affirmative defense at the time HHCA filed its objections to Kim's requests for admission, HHCA had some grounds on which to object based on relevance. As for the motion to reopen discovery, the trial court based its denial on the fact that the parties had been given multiple

extensions of discovery over the course of the litigation and had the opportunity to present and examine witnesses at the evidentiary hearing. In addition, the trial court concluded that the voting issue "should be apparent" to HHCA, because it was required under the Act (765 ILCS 605/19(a)(4) (West 2012)) to keep and maintain minutes of all its meetings for the preceding seven years.

¶ 13    Shortly thereafter, Kim filed a motion for summary judgment in which he argued, among other things, that HHCA's defense and counterclaim were precluded by the Board's failure to authorize HHCA's participation in the present suit by way of a vote at an open meeting. According to Kim, the holding in *Palm v. 2800 Lake Shore Drive Condominium Association*, 2014 IL App (1st) 111290, ¶ 87, makes clear that the Act requires that the Board vote on any litigation matter at a meeting open to all unit owners. He then argued that there was no evidence that the Board conducted any such vote at an open meeting, because none of the Board's meeting minutes reflected such a vote.

¶ 14    In response, HHCA argued that the Board did vote to approve HHCA's participation in the present litigation at an open meeting. In support, HHCA submitted a transcript of the testimony of Ben Beiler, the Board's president, given at the evidentiary meeting on Kim's motion to strike. Beiler testified that at the July 9, 2013, meeting, the Board discussed the suit filed by Kim and potential counterclaims during a closed executive session. Because some Board members were considering filing a counterclaim against other adverse Board members, those adverse Board members were asked to excuse themselves from the executive session. They were advised, however, that the meeting would subsequently be reopened to all unit owners. No vote was taken during that executive session. Following that executive session, the meeting was reopened to all unit owners. It was during the open meeting that a vote was taken

approving HHCA's participation in the present litigation, filing a suit against Kim, and possibly filing suit against adverse Board members. Beiler was also granted authority to run and oversee the litigation. The vote approving these actions was unanimous among the Board members who voted. The Board members who had been excused from the executive session did not return to participate in the open meeting, and thus did not vote. Beiler acknowledged that the minutes of the July 9, 2013,[1] meeting did not reflect a vote on the present litigation. Beiler also testified that at some point in 2013, prior to the meeting at which the vote was taken, there was an informal meeting of the Board members at someone's home at which the Board discussed Kim's lawsuit at great length. He denied, however, that any vote took place at that meeting.

¶ 15    The evidentiary hearing testimony of Donald O'Hara, Rosemary Corriere, and Brook Zemlan was also taken. O'Hara testified that he was a member of the Board in 2013 and that at the July 9, 2013, meeting he was never asked to leave the meeting and that he did not, at any point, leave the meeting. He denied that the Board voted to defend Kim's suit or to bring its own suit against Kim or K&H. He also denied that the Board voted to give Beiler authority to handle the litigation. Corriere also testified that she was a Board member in 2013 and that she was not asked to and did not leave the July 9, 2013, meeting. She also testified that no vote was taken to authorize the defense of Kim's litigation, the filing of a counterclaim, or Beiler's oversight of the litigation. Zemler testified that she was the property manager for the Hemingway House Condominiums in 2013 and that she took the notes that were turned into the formal meeting minutes for the Board meetings. Although the purpose of the notes were to record any and all votes that were taken and although she recorded as many votes as possible, it was very possible that she missed recording a vote, because there was room for error when she was taking notes

---

[1] The parties appear to agree that the vote on the present litigation, if it occurred at all, occurred at the July 9, 2013, Board meeting.

while also running the meeting. She testified that she had no recollection of a discussion of lawsuit involving Kim, members being asked to leave the meeting, or any votes giving Beiler authority to handle the litigation. She testified that litigation was always discussed in a closed, executive session where no minutes were taken, but the meeting would then be reopened to all unit owners for a vote.

¶ 16    HHCA also submitted an affidavit from Steven Ropka, who attested that he was a Board member in 2013 and that at a July 2013 meeting, the Board voted in an open meeting to defend the present litigation and pursue a counterclaim.

¶ 17    After Kim's motion for summary judgment had been fully briefed, HHCA filed a motion to supplement its response to Kim's motion for summary judgment with the affidavit of Ian Brodsky. Brodsky's affidavit, in almost identical terms to Ropka's affidavit, averred that he was a Board member in 2013 and that in July 2013, the Board voted to defend Kim's lawsuit and file its counterclaim. The trial court denied HHCA's request on the basis that the motion for summary judgment had already been fully briefed and set for decision.

¶ 18    On October 26, 2018, the trial court issued its opinion granting Kim's motion for summary judgment. The trial court concluded that HHCA failed to properly authorize its defense of Kim's suit and the filing of its counterclaim, noting that Beiler had testified to an informal meeting at which no votes were taken and the fact that none of the Board's meeting minutes reflected a vote on the litigation. Because the trial court concluded that there was no evidence that the Board properly authorized HHCA's litigation, it granted summary judgment in favor of Kim on HHCA's counterclaim. On this same basis, it also granted Kim summary judgment on his claim of unpaid legal fees and entered judgment in favor of him in the amount of $41,614.95.

¶ 19    Following an unsuccessful motion to reconsider, HHCA instituted this appeal.

¶ 20                                    ANALYSIS

¶ 21    On appeal, HHCA raises a number of contentions: (1) the trial court erred in granting summary judgment in favor of Kim on HHCA's counterclaim; (2) the trial court erred in allowing Kim to amend his affirmative defenses; (3) the trial court erred in denying HHCA's motion to reopen discovery; and (4) the trial court erred in denying HHCA leave to file the Brodsky affidavit. HHCA does not raise any issue with respect to the trial court's grant of summary judgment on Kim's complaint. We conclude that a genuine issue of material fact precluded summary judgment on HHCA's counterclaim. We also conclude that although the trial court did not err in allowing Kim to amend his affirmative defenses, it did err in refusing to reopen discovery after Kim's amendment of his affirmative defenses. The issue of Brodsky's affidavit is moot.

¶ 22                                Summary Judgment

¶ 23    HHCA's first contention is that the trial court erred in granting Kim summary judgment on HHCA's counterclaim. Primarily, HHCA argues that there existed a genuine issue of material fact that precluded summary judgment, because there was conflicting evidence of whether a vote was taken at an open meeting authorizing the litigation. We agree.

¶ 24    Summary judgment is to be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). Because summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is clear and free from doubt, we must view all evidence in the light most favorable to the nonmovant. *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 994 (2005).

We review the trial court's grant of summary judgment *de novo*. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006).

¶ 25 Section 18(a)(9)(A) of the Act (765 ILCS 605/18(a)(9)(A) (West 2012)) provides that condominium bylaws must provide in relevant part as follows:

"that every meeting of the board of managers shall be open to any unit owner, except that the board may close any portion of a noticed meeting or meet separately from a noticed meeting to: (i) discuss litigation when an action against or on behalf of the particular association has been filed and is pending in a court or administrative tribunal, or when the board of managers finds that such an action is probable or imminent ***; that any vote on these matters shall take place at a meeting of the board of managers or portion thereof open to any unit owner."

We have held that this language requires that any litigation matter be voted on at a meeting open to all unit owners. See *Palm*, 2014 IL App (1st) 111290, ¶ 87. Moreover, the failure of a condominium board to properly vote on litigation matters violates the Act and precludes a Board from pursuing the litigation. See *id.* at ¶¶ 87-88 (where the condominium board failed to vote at an open meeting to defend against the plaintiff's lawsuit, the plaintiff was entitled to summary judgment, and the trial court did not err in enjoining the Board from authorizing litigation without a proper vote and in ordering the Board to hold an open meeting for the purpose of voting to authorize the continued defense of the pending matter).

¶ 26 As an initial matter, we note that HHCA argues that Kim lacks standing to raise the issue of whether the Board conducted a proper vote to authorize its participation in the present action, because he is not an HHCA member or unit owner. HHCA contends that because the Act and HHCA's bylaws were not designed to protect the interests of third parties who are not HHCA

members or unit owners, Kim has no standing on which to assert the Board's alleged non-compliance with the bylaws or the Act. In support of this contention, HHCA cites to two cases from foreign jurisdictions, *Lake Forest Master Community Association, Inc. v. Orlando Lake Forest Joint Venture*, 10 So. 3d 1187 (Fla. 2009), and *Port Liberte II Condominium Association, Inc. v. New Liberty Residential Urban Renewal Co., LLC*, 86 A.3d. 730 (N.J. 2014). Although these cases might support HHCA's position, they are overcome by Illinois precedent holding that third parties may invoke or assert violations of the Act or association bylaws in litigation where the third party has an interest in avoiding multiple lawsuits. See *River Plaza Homeowner's Association v. Healey*, 389 Ill. App. 3d 268, 281 (2009) (the developer defendants had standing to challenge the plaintiff Association's standing to bring suit where the proper two-thirds vote was not obtained under the bylaws, even though the defendants were not members of the association, because they had an interest ascertaining the proper party to bring suit against them and avoiding multiple suits); *Board of Directors of Kennelly Square Condominium Association v. MOB Ventures, LLC*, 359 Ill. App. 3d 991 (2005) (trial court's dismissal of individual unit owners' suits affirmed where third-party defendant challenged their standing to bring suit on the basis that the Act and the association's bylaws gave the board exclusive standing to bring the claim, so as to avoid multiplicity of claims). Here, Kim has an interest in ensuring that HHCA's participation in the suit was properly authorized, so as to prevent individual unit owners from later bringing similar claims against him on the basis that HHCA's prior actions were invalid. Accordingly, we conclude that Kim has standing to assert the Board's alleged non-compliance with the Act and HHCA's bylaws.

¶ 27     We turn now to the question of whether the trial court properly granted summary judgment in favor of Kim on HHCA's counterclaim based on his affirmative defense that the

Board did not properly authorize HHCA's participation in the suit.[2] We conclude that there existed a genuine issue of material fact as to whether the vote was taken at an open meeting and, thus, summary judgment should have been denied.

¶ 28    Although the trial court observed that Beiler testified that a vote was taken at a 2013 meeting, it also concluded that later in his testimony, Beiler described that meeting as informal with no vote taken. We do not read Beiler's testimony in the same way. We find the following excerpts of Beiler's testimony as representative of the whole:

"Q. So it is your position that the Board voted to defend this litigation in 2013?

A. In 2013 the vote—the Board voted not only to defend this litigation but to also file a counterclaim against Mr. Kim at the same hearing—at the same meeting to eventually file a lawsuit against H and H—excuse me, K and H, Klein & Hoffman and also at the same meeting to potentially bring in directors who were adverse—who supported and were part of the scheme that we are alleging in the complaint.

And I was given complete authority of the same meeting to run this entire litigation from beginning to end at every phase of it without necessarily having to come to the— back to the Board for any kind of approvals. But I did get—go back to them. But that's kind of what happened at that meeting.

***

A. So we had all of that done at that meeting. Before that meeting—the meeting was an executive session initially. Before that meeting we asked all the adverse Board

---

[2] HHCA states in its brief that it does not contest the trial court's grant of summary judgment in favor of Kim on Kim's complaint, despite the fact that the trial court's decision in that respect was also based on its conclusion that the Board did not properly authorize HHCA's participation in this lawsuit.

members to excuse themselves because they were potentially defendants in that litigation. And they did without objection.

They were told that at some point we will be going into an open meeting again after the discussions. And they excused themselves and never showed up again. So that's kind of what happened there.

Q. Thank you. I want to make sure I understand this. Now, you are saying that at one meeting in 2013 there was a vote to defend against Mr. Kim's lawsuit, true?

A. In fact, I know you want to have a story that fits your story, but it is a more elaborate story than that. *Before that specific meeting* we had a meeting very soon after—we became the new Board at the—this is way before the [*Palm*] case. In fact it was I think 1913—excuse me, 2013.

THE COURT: Yes, we are not that old.

THE WITNESS: Yes, I know. I am maybe.

In 2013 we had a meeting with all the Board members or virtually all of them at the home of one of our Board members. And at that meeting we discussed thoroughly every aspect of the litigation in terms of who are we going to sue, who are we are going to sue, Kim, Klein Hoffman, potentially directors. And we kind of developed our total litigation strategy on this matter, but we chose to kind of defer doing anything because we had plenty of time to do that because we wanted to kind of first get into office and do our job and kind of calm the building down—

\*\*\*

Q. Okay, again, my question was there was a meeting of the open Board in 2013 where there was a vote to defend against Michael Kim's lawsuit; is that your testimony?

-12-

A. After the executive session there was an open meeting to do that. And there is some notation about the fact that—a discussion about that—an action regarding that litigation took place, yes.

\*\*\*

Q. Okay. And I think you said *also* there was a meeting at a home I heard in your testimony I wrote down?

A. In 2013.

Q. 2013 there was a meeting of the Board of Directors at someone's home?

A. Well, it was kind of an informal meeting of the new Board over, you know, cocktails and whatever. And we discussed this matter at great length.

Q. Are you claiming that that was a meeting where a vote took place to initiate this litigation?

A. No, I didn't say that. We didn't take any votes. We kind of—the way we ran our—I know I can't narrate. But the way we ran our meetings is virtually every decision was unanimous. And that happened not only in that tenure of my presidency but the two prior ones.

I always operated based on developing a consensus so we always were in agreement. If we weren't in agreement, we'd find a way to get to an agreement. So that's what happened there, just the discussion." (Emphasis added.)

¶ 29    Throughout his testimony, Beiler repeatedly stated that the issue of the pending litigation was discussed at a closed executive session on July 9, 2013, and that immediately following the executive session, the meeting was reopened to all of the unit owners. It was at that point that a vote was taken approving the HHCA's defense of Kim's suit, the filing of a counterclaim, and

authorization of Beiler to handle the litigation matters. The informal meeting referenced by the trial court appears to have been a gathering, shortly after the most recent board election, of all of the Board members—both newly elected and retained—for drinks at someone's home. During that gathering, the litigation was discussed but no vote was taken. It appears from Beiler's testimony that this informal gathering and discussion preceded and was distinct, separate from, and in addition to the July 9, 2013, meeting at which the matter was discussed in a closed executive session and then voted upon at an open meeting. Accordingly, we disagree with the trial court's conclusion that Beiler's testimony indicated that the only discussion of the current litigation was at an informal gathering at which no vote was taken. Instead, it appears that in addition to the informal gathering, there was a separate executive session at which the litigation was discussed and an open meeting at which a formal vote was taken.

¶ 30 In addition to Beiler's testimony that a vote was taken on the litigation at an open meeting, Ropka attested in his affidavit that a vote was taken at an open meeting. In its opinion, the trial court noted a conflict between Beiler's testimony and Ropka's affidavit. According to the trial court, Beiler testified that the Board meeting at which the litigation was discussed took place on August 8, 2013, while Ropka averred that the vote took place in July 2013. We could find no such inconsistency in the record. Initially, Beiler testified that he could not remember the date on which the Board discussed and voted on the litigation, but then later agreed that it occurred on July 9, 2013. In any case, any perceived inconsistency between Beiler and Ropka regarding the date of the meeting is irrelevant, as the pertinent question is *whether* the Board voted on the litigation at an open meeting, not *when* they voted on the litigation. Moreover, whether July or August 2013, HHCA would have discussed and voted on the matter before it filed its answer in September 2013.

¶ 31       In its order denying HHCA's motion to reconsider, the trial court also cited Beiler's testimony that certain Board members were excused from the meeting as a basis for its conclusion that a vote was not taken at an open meeting. We agree that if certain Board members were excused and not permitted to return to participate in the vote, such actions would necessarily defeat a conclusion that the vote occurred at an open meeting. That was not Beiler's testimony, however. He testified that certain Board members were excused from the executive session, because the other Board members wished to discuss the possibility of bringing claims against those excused Board members. Beiler further testified, however, that, upon being excused, those members were advised that following the executive session, the open meeting would reconvene. The excused members never returned, and the open portion of the meeting, including the vote, proceeded without them. The excused Board members' failure to return to the open meeting does not render the meeting any less open, because there is no evidence that they were not or would not have been permitted to return; rather, drawing all inferences in favor of HHCA, as we must, it appears that they simply chose not to return and participate.

¶ 32       Finally, in reaching its decision, the trial court relied heavily on the fact that the July 9, 2013, meeting minutes did not reflect that a vote was taken on the litigation. Rather, the minutes simply read, "The Association is filing a countersuit against the Association's former legal counsel, Michael C. Kim. To date, he has not been paid for some of his legal services and is suing the Association[] as a result." The trial court observed that the Act required the Board to keep minutes for all meetings for the preceding seven years (765 ILCS 605/19(a)(4)) and that the Illinois General Not for Profit Corporation Act ("NFP Act") (805 ILCS 105/107.75(a) (West 2012)) also required the keeping of meeting minutes. On appeal, Kim has adopted this position,

arguing that the omission of any mention of a vote in the July 9, 2013, meeting minutes is definitive proof that no such vote was taken.

¶ 33    Although it is certainly true that the Board was required to keep minutes of all of its meetings, we do not believe the fact that the minutes for the July 9, 2013, meeting do not reflect that a vote was taken is dispositive. Except in specific circumstances not applicable here, neither the Act nor the NFP Act impose requirements on the contents of the minutes, and they certainly do not impose any requirement that all votes be recorded. Similarly, the Act's requirement that litigation matters be voted on during open meetings does not impose an obligation to record that vote in the meeting minutes. Certainly, recording such votes would be in the best interests of condominium associations, as the failure to record a vote raises the question of whether one was ever taken. That being said, however, there is nothing in any of the applicable statutes that makes the recordation of the votes an element of a proper vote on litigation matters. Accordingly, the fact that the minutes do not reflect a vote is not fatal to HHCA's position that a proper vote was taken.

¶ 34    Kim also argues on appeal that because the minutes are the "sole record of HHCA's official acts," they cannot be contradicted by parole evidence, such as Beiler's testimony. In support, Kim cites *Western Sand & Gravel Co. v. Town of Cornwall*, 2 Ill. 2d 560, 564 (1954), and *O'Malley v. Village of Palos Park*, 346 Ill. App. 3d 567, 581-82 (2004), for the proposition that "official acts of municipal corporations must be recorded and the records are the only lawful evidence of the action to which they refer." Kim does not cite any authority, however, for the proposition that the same principle applies in the context of condominium associations. Accordingly, he has waived his contention that our determination of whether there existed a genuine issue of material fact regarding whether the Board voted on the litigation at an open

meeting rises and falls solely on the contents of the July 9, 2013, meeting.  See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 35       In sum, the record contains conflicting evidence on whether the Board voted in an open meeting to defend against Kim's lawsuit and to file a counterclaim.  Beiler testified and Ropka averred that the Board approved HHCA's participation in the suit by way of a vote at an open meeting on July 9, 2013, while O'Hara testified that no such vote took place.  The minutes for the July 9, 2013, meeting reflect that the Board decided to file a counterclaim against Kim, but contain no indication, one way or the other, whether that decision was reached by way of a vote at an open meeting.  This conflicting evidence clearly gives rise to a genuine issue of material fact regarding whether HHCA's participation in the present suit was properly authorized in accordance with the Act.  Accordingly, summary judgment should have been denied.

¶ 36       Kim also argues that even if there exists an issue of fact on the voting issue, we can nevertheless affirm on the basis that the Prior Board's adoption of Repair Option 2 and the accompanying special assessment was protected by the business judgment rule and mandated by law.  According to Kim, because all of HHCA's claims against him are premised on the Prior

Board's adoption of Repair Option 2 and the special assessment and because that adoption is insulated by the business judgment rule and the fact that it was mandated by law, he cannot be held liable for any breaches based on that adoption. Kim's contentions lack merit.

¶ 37     The business judgment rule provides that "[a]bsent evidence of bad faith, fraud, illegality, or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors." *Fields v. Sax*, 123 Ill. App. 3d 460, 467 (1984). The business judgment rule does not apply, however, where the allegations do not relate to the directors' alleged mismanagement of the company, but instead relate to alleged violations of contracts or bylaws. See *Alliance Property Management, Ltd. v. Forest Villa of Countryside Condominium Association*, 2015 IL App (1st) 150169, ¶ 31; *Richard W. McCarthy Trust Dated September 2, 2004 v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 536-37 (2011). Here, many of HHCA's allegations in the third amended counterclaim allege that the Prior Board violated HHCA's bylaws and the Act. Accordingly, the business judgment rule does not apply, and the grant of summary judgment in favor of Kim cannot be affirmed on that basis. See *Alliance*, 2015 IL App (1st) 150169, ¶ 31 (business judgment rule did not apply where the board's alleged acts violated the condominium association's bylaws); *Richard W. McCarthy Trust*, 408 Ill. App. 3d at 536-37 (where the plaintiff did not seek to hold the defendant liable for mismanagement but instead to compel its compliance with the terms of the note, the business judgment rule did not apply).

¶ 38     Kim also claims that the trial court's grant of summary judgment in his favor on HHCA's counterclaim may be affirmed on the basis that the selection of Repair Option 2 was mandated by law. Kim argues that because the Prior Board was ordered to proceed with Repair Option 2 in the housing court case, the repairs were mandated by law, thereby releasing the Prior Board from the requirement to put the special assessment for the repairs to a vote by the unit owners. Kim's

contention fails, however, because the allegations against him include allegations that are not based on the Prior Board's adoption of Repair Option 2 or its imposition of a special assessment to finance Repair Option 2. For example, HHCA alleges that Kim advised the Prior Board to not defend the claims in housing court, caused the entry of the agreed order directing repairs in accordance with Repair Option 2 for the purpose of claiming that Repair Option 2 was "mandated by law," failing to defend the housing court case in accordance with HHCA's interests instead of the personal interests of the Prior Board's members, and advising the Prior Board to amend the construction contract to provide for a $500,000 penalty if the contract was terminated by subsequent Boards. These allegations are separate and apart from the Prior Board's adoption of Repair Option 2 and the accompanying special assessment and are no less wrongful even if the Prior Board's actions were, in fact, mandated by law. Accordingly, summary judgment in favor of Kim on HHCA's counterclaim cannot be affirmed on this basis.

¶ 39                              Motion to Amend Affirmative Defenses

¶ 40        HHCA next argues that the trial court erred in allowing Kim to amend his affirmative defenses to include the defense that the Board did not properly authorize HHCA's participation in this lawsuit. It is within the trial court's discretion whether to allow the amendment of pleadings, and we will not reverse the trial court's determination in that respect absent an abuse of discretion. *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 21. In this case, HHCA has failed to demonstrate that the trial court abused its discretion in permitting Kim to amend his affirmative defenses, because HHCA failed to include in the record on appeal a transcript of the hearing on Kim's motion for leave to amend.

    "An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be

presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."

*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Here, the order granting Kim leave to amend his affirmative defenses simply states that his request is granted and does not explain the trial court's rationale. Absent a transcript of the proceedings on the motion for leave to amend, we are unable to evaluate the trial court's reasoning in permitting Kim to amend his affirmative defenses. Accordingly, we must presume that the trial court did not err. *Romito*, 2019 IL App (1st) 181152, ¶ 24.

¶ 41                                    Motion to Reopen Discovery

¶ 42        HHCA next argues that the trial court erred in denying its motion to reopen discovery following Kim's amendment of his affirmative defenses. "The trial court has broad discretion in whether or not to reopen discovery, and that decision will not be disturbed absent an abuse of discretion." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 19. "The amendment of pleadings to state a new claim after the close of discovery usually requires reopening of discovery." *Paul H. Schwendener, Inc. v. Larrabee Commons Partners*, 338 Ill. App. 3d 19, 32 (2003).

¶ 43        Here, the trial court denied HHCA's request to reopen discovery on the basis that multiple discovery extensions had been granted over the course of litigation, the parties had the opportunity to present and examine witnesses at the June 2018 evidentiary hearings on Kim's motion to strike and deem admitted, and the voting issue should have been apparent to HHCA since it was required to maintain meeting minutes.

¶ 44        We conclude that under the circumstances present here, the trial court abused its discretion in denying leave to reopen discovery. The last of discovery in this case closed on May

25, 2018.[3] On May 31, 2018, Kim filed his motion for leave to amend his affirmative defenses to add the brand new affirmative defense based on the Board's alleged failure to properly authorize HHCA's participation in the suit, and that motion was not granted until June 28, 2018. Prior to Kim seeking to amend his affirmative defenses, the voting issue was only raised in his requests for admission, which HHCA objected to on the basis that they were irrelevant because the voting issue did not relate to any of the pending claims or defenses. When it granted HHCA's motion to reconsider the grant of Kim's motion to strike, the trial court recognized that the voting issue was irrelevant until the amendment of the affirmative defenses. Accordingly, it seems fundamentally unfair to permit Kim to raise a brand new affirmative defense after discovery had closed when HHCA had not had any opportunity or reason to conduct any discovery on this issue prior to that point. This is especially true where none of the claims or defenses raised prior to the amendment of the affirmative defenses related to the voting issue. See *Paul H. Schwendener*, 338 Ill. App. 3d at 32 (where the trial court permitted the defendant to add a new claim of fraud to its counterclaim after the close of discovery and the plaintiff did not previously have the opportunity to conduct discovery on the claim, the trial court abused its discretion in denying the plaintiff's request to reopen discovery).

¶ 45    We acknowledge the trial court's point that multiple extensions of discovery had been granted during the pendency of this matter. That does not change the fact, however, that HHCA never had a reason or opportunity to conduct discovery on the voting issue. Although the parties were able to present and examine witnesses at the evidentiary hearings on Kim's motion to strike, those hearings, which occurred after the close of discovery, were no substitute for true discovery, as HHCA could not blindly call witnesses for the purpose of ascertaining the scope of

---

[3] HHCA contends on appeal that discovery closed on April 30, 2018. Although this was true at one point, on April 25, 2018, the trial court extended oral fact discovery to May 25, 2018.

their knowledge as it would have been able to do during discovery. Finally, as discussed above, the meeting minutes are not dispositive of the issue of whether the Board properly authorized HHCA's participation in the present suit. Accordingly, HHCA's ready access to the Board's meeting minutes did not mitigate the prejudice caused by allowing Kim to amend his affirmative defenses without reopening discovery.

¶ 46    The trial court's denial of HHCA's motion to reopen discovery is reversed, and the trial court is directed to permit the parties to conduct reasonable discovery on Kim's affirmative defense based on the Board's alleged failure to properly authorize HHCA's participation in this litigation.

¶ 47                                Brodsky Affidavit

¶ 48    Finally, HHCA contends that the trial court erred in denying it leave to supplement its response to Kim's motion for summary judgment with Brodsky's affidavit. Because we reverse the trial court's grant of summary judgment in favor of Kim on HHCA's counterclaim even without the benefit of the Brodsky affidavit, this issue is now moot and we need not address it.

¶ 49                                CONCLUSION

¶ 50    For the foregoing reasons, the Circuit Court of Cook County's judgment is reversed in part, affirmed in part, and remanded for further proceedings consistent this decision.

¶ 51    Reversed in part, affirmed in part, and remanded.